# Hibernia Fire Engine Co. *versus* Commonwealth ex rel. George Harrison.

H. was an active member of a volunteer fire company in 1864, and until 1867, when he left the state, but not with the purpose of changing his residence. He paid his dues regularly until April 28th 1871. In March 1871, by reason of the creation of a paid fire department, the company ceased to run to fires, and the next month converted its effects into cash, realizing several thousand dollars, and leased their engine-house. In August following they passed an amendment to their by-laws, changing the rate of dues from 12½ cents to $2 per month. H. did not pay these increased dues, and his name was erased from the. books. In a proceeding by mandamus at his relation, *Held,* that the amendment to the by-laws increasing the rate was unreasonable, and a member who did not assent thereto was not bound to pay them. *Held, further,* that such a member had rights in common with the other members, and upon a dissolution of the company and the distribution of the property among the members, he was entitled to his share as a member.

2. Whether a by-law is reasonable or not is a question for the court solely. But its unreasonableness should be demonstrably shown. Courts, in construing by-laws, will interpret them reasonably, if possible, not scrutinizing their terms for the purpose of making them void, nor holding them invalid, if every particular reason for them does not appear.

February 25th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county :* Of January Term 1880, No. 133.

This was a proceeding by mandamus brought by the Commonwealth at the relation of George Harrison against the Hibernia Fire Engine Company.

Upon the presentation of the petition of the relator, a writ of alternative mandamus issued, and the defendants filed a return thereto, to which a replication was filed and issue joined. At the trial, it appeared that the engine company was instituted February 20th 1752, and was incorporated by the Court of Common Pleas of Philadelphia, September 20th 1841. The relator joined the company as an active member in July 1864, and remained upon the active roll until May 1867, when, at his request, his name was placed upon the absent roll, and he went to the state of Missouri.

[Hibernia Fire Engine Co. *v.* Harrison.]

In the autumn of 1866, the company adopted, among others, Section 16, of By-Law 17, providing, "That if any member shall neglect or refuse to pay his indebtedness, exceeding three dollars, after receiving notice in writing from the assistant secretary, the president shall erase his name from the roll unless a satisfactory reason be given to that officer for such neglect." The relator left the city in the spring of 1867, and made no payment to the company until June 30th 1871, when he forwarded to the secretary the sum of $8.35, the amount of his indebtedness from April 1866, until April 1871. On December 29th 1870, the councils of the city of Philadelphia passed an ordinance to create a Paid Fire Department, which substituted such fire department for the voluntary organizations theretofore existing, and after March 1871, the Hibernia Fire Engine Company ceased running to fires. At the stated meeting of May 26th 1871, an amendment to the by-law, fixing the rate of dues was proposed, and at the stated meeting of August 25th 1871, was adopted by a vote of 34 in favor of it, to 6 against, in accordance with by-law 32, authorizing amendments to be made by a vote of two-thirds of the members present. This amendment fixed the rate of dues at $2 per month, instead of 12½ cents, as they had previously been. In the course of the year 1871, the company converted its personal effects into cash, and leased its engine-house to the city for $1000 per annum.

In the fall of 1871, the assistant secretary sent through the mail to the relator's address, at St. Joseph, Missouri, a notice of indebtedness amounting to $4.50, to which no answer was received. In January or February 1872, another notification of his indebtedness, in the same amount, was mailed to him, containing the warning that unless it was paid by the next stated meeting his name would be dealt with in accordance with section 16 of by-law 17. To this an answer was received from the relator by the secretary, refusing to pay the amount and asserting that he was being unfairly dealt with. The secretary wrote in reply, assuring him that no wrong was being done, and informing him of the amount of property in the hands of the company and the number of members entitled to participate in its distribution. At the next stated meeting, February 23d 1872, the roll of delinquents was called; the secretary and assistant secretary reported to the meeting that notifications had been sent to the relator, his letter refusing to pay his indebtedness was read, and no one appearing to answer for him, the president erased his name from the roll. Some weeks afterwards, a former assistant secretary of the company received from the relator a post-office money order for $4.50, dated St. Joseph, Missouri, March 20th 1872, which he retained in his possession until the relator's return to Philadelphia, when he drew the money from the post-office and handed it to relator. In May 1872, he came back to Philadelphia, and sometime afterwards sent a letter to the company, requesting

[Hibernia Fire Engine Co. *v*. Harrison.]

to be restored to the roll, which was read in open meeting and laid on the table.

In pursuance of the Act of Assembly of 28th May 1872, the company, on the 27th of February 1874, passed a resolution to dissolve and surrender its charter, and a committee was appointed to carry the resolution into effect. March 27th 1874, ten members declared their intention to accept the provisions of the Act of 1872, and continue the existence of the corporation as a loan association, under section 1, of said act. December 11th 1874, the last meeting of the company was held, and a report of a committee received, stating the assets to be $42,946.15, and the number of members on the roll entitled to share in the distribution to be 54. In the meantime, various members resigned from the company, receiving different sums of money, regulated by the date of their resignations. This suit was brought by the relator September 23d 1873.

The third and fourth points of the defendant, both of which the court refused, were as follows:—

3. That if the relator was indebted to the company in a sum exceeding three dollars, on the 23d of February 1872, and was notified in writing of that fact by the secretary, and refused or neglected to pay his indebtedness after such notification, the verdict must be for the defendant.

4. That the relator, by his absence from this state for five years, lost an essential qualification for active membership of the company, and hence the verdict must be for the defendant.

In the general charge the court, Pierce, J., said: "If you find there was no necessity for this increase of dues, the amended by-law authorizing it was unreasonable and void. If it was made for the purpose of turning out members, then it was oppressive and unreasonable, and they had no power to make it. The validity of the by-law depends upon the intent with which it is adopted. A by-law endeavoring to get rid of a member is invalid.

"But I rest this case upon the fact that there was no legal trial of the relator. He had no day of hearing before the company. He had no intimation of the increase of dues until the bill for them was sent to him. If he had been given an opportunity to be heard, he might have contended that the by-law was passed in his absence, and he did not know the reason of it; that he reasonably hesitated about payment, and that he had come and tendered payment, and that the erasure be stricken off. That might have induced the company not to erase him. I therefore instruct you that the company had no cause to strike him from the roll. They could not disfranchise him or destroy his membership, if that is erasure, without an invitation or summons to appear before the company. The verdict should be for him.

"The only remaining question is that of damages, which you must determine. Some of the members got $780, and some over

$800. There appears to have been about $43,000 to be distributed, and fifty-four members on the list. The relator's membership entitled him to an equal share in the distribution."

The verdict was for plaintiff for $780.10. After judgment, defendant took this writ, and alleged that the court erred in the refusal of defendant's points and in the portion of the charge noted above.

*Henry S. Hagert, William A. Thorpe* and *W. H. Staake,* for plaintiff in error.—From the date of its institution, in 1752, until after the date of the erasure of the relator's name from the roll of members, the Hibernia Fire Engine Company was simply a charity. All the property of every description in its possession belonged to the public, and was held by it merely as trustee for the public. If, in all this period of nearly a century and a quarter, the company's legal existence had been determined, the property in its hands would have reverted to the state. No member had the slightest legal ownership or interest in it beyond that he may have had, as a citizen, in common with every other citizen in public property : Burgesses and Council of the Borough of Bethlehem *v.* The Perseverance Fire Co., No. 1, 3 W. N. C. 104 ; Humane Fire Co.'s Appeal, 7 Norris 389.

To defeat a by-law, some distinct rule of law or reason ought to be shown to have been violated : Rex *v.* Ashwell, 12 East 32; Regina *v.* The Saddler's Co., 116 E. C. L. R. 1066 ; Commonwealth *v.* Cain, 5 S. & R. 510 ; Weckerly *v.* Geyer, 11 Id. 35 ; Franklin Association *v.* Commonwealth, 10 Barr 357 ; Insurance Co. *v.* Connor, 5 Harris 142 ; Harmony Fire Co. *v.* Fire Association, 11 Casey 496 ; Commonwealth *v.* St. Patrick's Society, 2 Binn. 441 ; Railway Co. *v.* Fitler, 10 P. F. Smith 124 ; Society *v.* Burford's Adm'r, 20 Id. 321. Relator as a member of the company was bound by its by-laws : Toram *v.* The Association, 4 Barr 519; Commonwealth *v.* Pike Beneficial Association, 8 W. & S. 247 ; Grant on Corporations, p. 265. Nothing was submitted to the jury save the questions of the reasonableness or necessity of the increase of dues, and the question of damages. As to the latter, the evidence may be searched in vain for anything by which to form a standard of the amount due the relator in case the verdict should be for him.

*I. Tyson Morris* and *Pierce Archer, Jr.,* for defendant in error. —The company was a corporation owning property, whose charter contained no express power of disfranchisement. Whatever incidental power of amotion they may have had, the disfranchisement of relator for non-payment of dues, amounting to $4.50, was *ultra vires :* Baggs's Case, 11 Rep. 99 ; Protector and Town of Kingston, Style 480 ; Ang. & Ames. on Corp., sect. 409, 410 ; Willcock

[Hibernia Fire Engine Co. *v.* Harrison.]

on M. C., *271, 272; Evans *v.* Philadelphia Club, 14 Wright 107; The Butchers' Beneficial Association, 11 Casey 151.

Assuming that the corporation had the power of disfranchisement for such an offence, they could not delegate it to a single officer: Rex *v.* Doncaster, Sayer 38; State *v.* Chamber of Commerce, 20 Wis. 63; Rex *v.* Head, 4 Burr. 2515; Rex *v.* Spencer, 3 Id. 1838; Newling *v.* Francis, 3 T. R., per Lord Kenyon 196; Rex *v.* Ginever, 6 Id. 594; McCullough *v.* Annapolis Railroad Co., 4 Gill 58; Ex parte Winsor, 3 Story 411. It imposes an unreasonable penalty for a trifling offence: Adley *v.* Reeves, 2 M. & S. 53; Cantan *v.* Society, 3 Daley 20.

A corporation cannot by a by-law, impose a forfeiture of stock for non-payment of calls, without express power in the charter or act of incorporation: In re Long Island Railroad Co., 19 Wend. 37; s. p., In re Nat. Fuel Co., 5 Jurist, N. S. 420; Kirk *v.* Nowill, 1 Term R. 118; Phillips *v.* Allen, 5 Wright 481; Pulford *v.* Fire Department, 31 Mich. 458; Riddle *v.* Harmony Fire Ins. Co., 8 Phila. 310. The assent of a member will not be presumed: Great Falls Ins. Co. *v.* Harvey, 45 N. H. 292.

There was no notice of intention to expel, no summons or opportunity to defend himself against the charge of indebtedness: Baggs's Case, 11 Co. 93; Com. *v.* German Society, 3 Harris 251; State *v.* Adams, 44 Mo. 570, 585: Delacy *v.* Navigation Co., 1 Hawks 274; Com. *v.* Beneficial Society, 2 S. & R. 141; People *v.* Benevolent Society, 24 How. Pr. 221.

The question of the reasonableness of the amendment, increasing the dues, was not left to the jury, for the reasonableness of a by-law is a question of law for the court: Ang. & Ames on Corp., sect. 357; Bock *v.* Lauman, 12 Harris 435; Allen *v.* Phillips, 5 Wright 481; Com. *v.* Worcester, 3 Pick. 462; Adley *v.* Reeves, 2 M. & S. 60; Bacon's Abr. tit. By-law; St. Patrick Beneficial Society *v.* McVey, 11 Norris 510.

Mr. Justice TRUNKEY delivered the opinion of the court, March 8th 1880.

The relator became an active member of the company in July 1864, and remained such until May 1867, when, at his request, his name was placed on the "Absent Roll," and he went to Missouri. On February 23d 1872, his name was erased for non-payment of dues. To that date he had been regularly charged with dues, all of which were paid up to April 28th 1871, as appears by the books of the company. Afterwards the dues were increased, he was notified, and his neglect to pay was the sole reason for erasing his name. The entire testimony, including the action and correspondence of the company, repels an inference that he left this state with intention to change his residence, or that he had lost his citizenship; and the fourth point was rightly refused.

By reason of the creation of a paid fire department, the com

[Hibernia Fire Engine Co. *v.* Harrison.]

pany ceased to run to fires in March 1871. In the next month it converted its personal effects into cash, amounting to $44,462, and leased its engine-house for one year from March 15th 1871 for $1000. In August following, an amendment to the by-law fixing the rate of dues was adopted, changing the rate from 12½ cents to $2 per month. The 6th article of its constitution declares " the object of the corporation shall be the promotion of the *public good* by the extinguishment of fire ; and the fund shall be appropriated to no other object than that for which it was provided." After the company had ceased to extinguish fire, had sold its engine and other personalty, and leased its house, what was the object in increasing the monthly dues of its members to sixteen times their former rate ? It did not propose to prove any object, its minutes show none, and none is suggested. Undoubtedly there was an object, but no court could conceive of one within the powers of the company. Its charter is simple and easily understood, and not a word can be distorted into an authority for raising or appropriating funds for a purpose other than is nominated in the 6th section. With its business gone, its personal property converted into money, its real estate leased, with scarcely any legitimate expenses, and thousands of dollars in its treasury, the amendment to the by-law increasing dues was most extraordinary and unreasonable. No member, who did not assent, was bound to pay the increased rate. There is no pretence of necessity for it ; no purpose is avowed for which the money was designed. No matter how large the majority, the charter was the law for the whole, protecting a single member in his rights, though all others were against him.

A by-law requiring every freeman and brother of the company, whether he used the trade or not, to pay 2*s.* per quarter for use of the company, was held void, because " there is nothing to show that a quarterage to such an extent, or to any extent, is necessary for the company ; and, for anything which appears to the contrary, the company have sufficient funds of its own from other sources for all the purposes of the company :" The London Tobacco Pipe Makers' Co. *v.* Woodroffe, 7 B. & C. 838.

Whether a by-law is reasonable or not is a question for the court solely : Ang. & Ames on Cor., sect. 357 ; Commonwealth *v.* Worcester, 3 Pick. 462. But its unreasonableness should be demonstrably shown. Courts, in construing by-laws, will interpret them reasonably, if possible, not scrutinizing their terms for the purpose of making them void, nor holding them invalid if every particular reason for them does not appear : Id. We have looked in vain through so much of the minutes of the company as has been furnished for a reason for the amended by-law increasing the dues. The striking out of sect. 15, law 17, on the 26th of May previous, was not a good reason. That section provided the terms for restoration of the names of erased members ; it was rescinded, and then

[Hibernia Fire Engine Co. *v.* Harrison.]

the heavy tax imposed. The written evidence and admitted facts demonstrate that the by-law was unreasonable, and the learned judge committed no error in directing a verdict for the plaintiff.

It is unnecessary to consider whether a member could be disfranchised under the said by-law, without proceeding as directed by sects. 1 and 2 of law 24.

The plaintiff had rights in common with the other members. If he had no individual interest in the property prior to the Act of 1872, neither had they. If, by virtue of that act, the property has become vested in the company so that it may be distributed among its members, he is entitled to his share as a member.

The right to recover damages is statutory: Act of June 14th 1836, Pamph. L. 626; Marion Ben. Soc. *v.* Drake, 7 Casey 82. There was evidence that the assets amounted to nearly $43,000; and fifty-five claimants. One witness received $836 as his share. The jury had evidence to enable them to determine the damages.

Judgment affirmed.