IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1887.

## LYNN v. FREEMANSBURG B. & L. ASSOCIATION.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON
COUNTY.

Argued March 10, 1887—Decided October 3, 1887.

1. A by-law of a building and loan association, incorporated under the act of April 12, 1859, P. L. 544, which imposed as a fine upon stockholders delinquent in payment of monthly dues " the additional sum of ten cents monthly on each and every dollar due," is unreasonable, extortionate, oppressive and therefore void.

2. A member of such an association, who is also a mortgage debtor to it under the loan provisions of its organization, is not concluded by the payment of such illegal fines and is entitled to credit therefor in a scire facias upon his mortgage, as for a payment upon the debt and interest secured.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

No. 231 January Term 1887, Sup. Ct.; court below, No. 40 April Term 1885, C. P.

This cause, a scire facias sur mortgage, by The Freemansburg Building and Loan Association against Josephus Lynn, by agreement of the parties was submitted to the decision of the court without a jury, under the act of April 22, 1874, P. L. 109.

VOL. CXVII—1

The court, W. W. SCHUYLER, P. J., after the case was closed on the evidence, found the following facts:

The Freemansburg Building and Loan association, plaintiff, was duly incorporated on November 20, 1872, under the act of April 12, 1859, P. L. 544. There is no evidence that the association accepted the act of April 10, 1879, P. L. 16. In October, 1874, the defendant became a member of the association by subscribing for five shares of its capital stock, second series; and in October, 1876, he subscribed for twenty additional shares in the third series, but subsequently withdrew six of these last mentioned shares, which left him the owner of nineteen shares. The by-laws of the association provide inter alia as follows: Each stockholder for each share held by him must pay into the treasury at each stated monthly meeting the sum of one dollar, which are called his monthly dues, until the value of the whole stock shall be sufficient to divide to each share of stock the sum of $200. The holder of each share of stock is entitled to a loan from the association of $200. These loans must be made in open meeting to the highest bidder, but no loan can be accepted at less than ten per cent. premium. When a loan is effected the borrower receives the amount of loan bid, less the premium, but he must give his obligation for the full amount and must pay interest on the same monthly. To secure the repayment of the loan, with interest, the borrower is required to give a satisfactory bond and mortgage, and in addition for every loan of $200 he must transfer one share of stock to the association as collateral security.

ARTICLE VII., section 1: " Each and every stockholder or trustee who shall neglect or refuse to pay his monthly dues or interest as often as the same shall become due and payable, shall forfeit and pay the additional sum of ten cents monthly on each and every dollar due by him."

ARTICLE V., section 5: " Each stockholder or trustee on receiving his certificate of stock shall be considered as obligating himself to pay promptly his monthly dues, fines and interest, and in all respects to comply with the requisitions of the constitution and by-laws and the rules and regulations of the board of directors."

ARTICLE VIII.: " If any stockholder or trustee shall continue

to neglect or refuse to pay his, her or their monthly dues and fines for the space of six months, his, her or their share or shares of stock may be declared forfeited by the board of directors, when the same shall revert to the association; after first deducting the proportion of losses and expenses, all fines, the defaulting stockholder shall be entitled to receive any balance of his, her or their monthly payments and shall from thenceforth cease to be a member of this association."

ARTICLE IX., section 2: " Any stockholder who has received a loan may repay the same at any time, and in case of the repayment thereof before the expiration of the eighth year after the organization of the corporation, there shall be refunded to such stockholder one eighth of the premiums paid for every year of the said eight years then unexpired."

The defendant, as the owner of nineteen shares of stock, being entitled to borrow from the association $3,800, at different times bid out smaller sums aggregating that amount, at an average premuim of $22\frac{9}{19}$ per centum, to secure the payment of which, with interest, he assigned his stock as collateral and also gave the mortgage in suit, which is dated Dec. 28, 1876. The mortgage calls for the payment of $5,000, but the correct sum is $3,800. After giving the mortgage the defendant frequently defaulted in the payment of both his monthly dues and interest, in consequence of which he was charged with a fine of ten cents monthly on each dollar of his indebtedness at the time the fines were imposed. To illustrate: Defendant's monthly dues and interest amounted to $38. In February, 1879, he defaulted. By adding the ten per cent. we have his total indebtedness for that month $41.80. He defaulted again the next month, making his total indebtedness, including the fine for February, $79.80. To get at the amount of his fines for March, ten per cent. on the $79.80 was calculated, and so on to the end of the chapter. An account of these fines was kept, not only in the books of the association, but also in a book furnished to the defendant for his information.

The defendant from time to time made payments on account of his dues, interest and fines, but notwithstanding these payments he was, on May 22, 1882, indebted to the association, as shown by the books, in the following sums: Dues, $302; interest, $302; fines, $360.13; total, $964.13. In addition to

these sums the defendant was then indebted on protested checks given for fines and dues, for which he had received credit, in a sum sufficient to increase his indebtedness for fines, dues and interest to considerably more than $1,000. On the said 22d day of May the defendant, under the threat that his mortgage would be foreclosed, paid $1,000. A few days afterwards he paid in addition a sum sufficient to cancel his entire indebtedness to the association for fines, dues and interest. These payments were made by the defendant voluntarily, with a full knowledge of the facts, and for the purpose of squaring his accounts with the association, and they were so applied. After thus squaring his accounts the defendant continued to be a member of the association, sometimes paying his dues and interest and sometimes defaulting as before, until Feb. 14, 1885, when his stock was declared forfeited at a meeting of the board of directors, the defendant having neglected to pay his monthly dues and fines for the space of six months prior to the date last mentioned.

Between May 22, 1882, and Feb. 14, 1885, the defendant became indebted to the association for dues, interest and fines in the following sums: Dues, $627; interest, $627; fines, $1,536.38; total, $2,800.38. During the same period he made payments, as appears from the books of the association, as follows: Dues, $335; interest, $335; fines, $442.59; total, $1,112.59. Included in this last sum are a number of checks aggregating $202.18, which the plaintiff alleges were not paid, but the evidence as to these checks is not sufficiently clear to permit of their adjustment in the present suit. Since suit brought the defendant has paid to the association $175.37, which the association has never appropriated, although still holding the money. Defendant now asks to have this money appropriated to the payment of the mortgage.

The defendant has received from the association as the net proceeds of his mortgage, $2,946, and $150 when he withdrew his six shares; total, $3,096. He has paid to association the following sums: Dues, $1,878; interest, $1,551.50; fines, $950.31: Since suit brought, $175.37; total, $4,555.18.

The conclusions of law found by the court were as contained in the following points and the answers thereto:

The plaintiff's points in substance were:

Statement of Facts.

1. That the various payments made by the defendant on May 22, 1882, and prior thereto, as fines, eo nomine, were not usurious.

Answer: Affirmed.

2. That, as the matter of fact, on May 22, 1882, plaintiff and defendant had a settlement to that date, and the defendant paid $1,000 which was appropriated by mutual agreement to dues, interest, fines and to his unpaid checks, being all the arrearages then due by him; that such payment and appropriation were voluntary; that defendant had actual notice of the mode of assessment adopted by the association and of the law and by-laws under which it was made. That, as matter of law, this payment and appropriation were conclusive and the defendant cannot now have a re-appropriation made either by himself or by the court.

Answer: Affirmed.

3. That, as matter of fact, plaintiff is a mutual association of which the defendant was a member continuously from the date of the mortgage until February 14, 1885; that the fines imposed since May 22, 1882, were imposed according to the charter and by-laws and defendant made payment on account thereof voluntarily. That, as matter of law, he is presumed to have had actual knowledge how these fines were assessed and of the by-law under which they were levied, and is estopped from objecting to the method of assessment, is concluded by the payments made and cannot now have a different appropriation made either by himself or by the court.

Answer: Affirmed.

The defendant's points in substance were:

1. That by the provisions of the mortgage, the mortgagee was bound to pay only $25 per month, and, as the undisputed evidence shows that, at the time the scire facias was issued, the defendant had paid more than $25 per month, the finding must be in favor of the defendant.

Answer: I cannot affirm this point.

2. That, even if the foregoing were not correct, the evidence shows that at the time the suit was brought, the defendant had paid dues, interest and legal fines in excess of the amount which he was required to pay, and the finding must be for the defendant.

Answer: I cannot affirm this point.

3. That whenever default was made by the defendant in the payment of dues, or interest, or both, the only fine which the association could legally inflict was ten cents on each dollar of the sum so remaining unpaid; that any fine imposed in excess of that amount was illegal and void, and that no payment or alleged settlement by the defendant would legalize any fine illegally imposed, or deprive him of the right to have payments made by him appropriated to the payment of dues, interest and legal fines only.

Answer: I cannot affirm this point.

Upon these findings of fact and conclusions of law the court made a calculation and decree as to the amount for which judgment should be entered for the plaintiff. To this decision both the plaintiff and defendant excepted, when the court entered a modified judgment as follows:

Charge defendant with $2,433, which is the difference between $3,800, the original amount of the mortgage, and $1,367, which is the amount of dues paid by the defendant up to and including the settlement of May 22, 1882. Also with dues and interest at the rate of $38 per month, from May 22, 1882, to February 14, 1885, when defendant's stock was forfeited, less $518 paid on account during this period. Also with interest on $2,433 from February 14, 1885, to this date, crediting the following payments: May 9, 1885, $49.25; June 24, 1885, $41.53; July 27, 1885, $45.13; Aug. 26, 1885, $39.46. The balance will be the amount for which judgment should be entered against the defendant, and it is ordered that judgment be entered accordingly.

Judgment having been entered for the balance thus found to be due, to wit: $3,266.53, the defendant thereupon took this writ, assigning for error the affirmance of the plaintiff's points, the refusal of the defendant's points and the entry of said judgment.

*Mr. Edward J. Fox (Mr. Edward J. Fox, Jr.,* with him), for the plaintiff in error:

1. The proper measure of fines is the real damage the building association sustains from the failure to pay his dues. A fine of from one to two per cent. per month would in nearly all cases be sufficient and just. Oppressive fines tend directly

to destroy the primary object of the society's usefulness, the assistance of those of small means. Equity will relieve against fines grossly oppressive: Endlich B. & L. Ass'ns, §§ 410, 412, 413; 1 Story Eq. J., §§ 1316, 1317, 1319, 1320; Streeper v. Williams, 48 Pa. 458. The act of April 10, 1879, P. L. 16, was intended to restrict the power to levy excessive fines; § 6 of that act was intended to apply to all building and loan associations, including those theretofore incorporated: House J., 1879, 256; Senate J., 1879, 539.

2. But, even under the by-law of this association only one fine could be inflicted for a default, and the infliction of fines upon the arrearages of a past month, and of fines upon fines, was utterly illegal and unreasonable, and their payment cannot be enforced: Marietta B. & L. A. v. Hanlen, 7 Luz. L. R. 165; Monumental B. & L. A. v. Lewin, 38 Md. 445; Shannon v. Building Ass'n, 36 Md. 383.

3. How was the defendant estopped? He committed no fraud, practiced no deception, which are essential elements in estoppel, and the plaintiff did not alter his position in any way in consequence of what the defendant did: Bisp. Eq., §§ 280, 282; Van Rensalaer v. Kearney, 11 How. 297; Hays v. Heidelberg, 9 Pa. 203; Newman v. Edwards, 34 Pa. 32; Duncan's App., 43 Pa. 67; Story Eq. J., § 1543.

4. This charge of illegal fines is equivalent to the taking of usury, and under such circumstances even a judgment will be opened to allow credit for what has been illegally paid: Wilson v. Leinbach, 6 W. N. 483; Walter v. Breisch, 86 Pa. 457.

*Mr. B. F. Fackenthall* (with him *Mr. O. H. Meyers*), for the defendant in error:

1. The court found that the payment of these fines was voluntarily made with a full knowledge of the facts, and such a payment, though in ignorance of the law or the legal circumstances of the case, cannot be recovered back: Union N. Bank v. Dersham, 15 W. N. 541; Speise v. McCoy, 6 W. & S. 485; Ege v. Koontz, 3 Pa. 109; Wheatfield v. Brush Valley, 25 Pa. 112; Real Estate Sav. Inst. v. Linder, 74 Pa. 371; Allentown v. Saeger, 20 Pa. 421; Wolbach v. B. Ass'n, 84 Pa. 211.

2. The defendant paid the fines under a mistaken interpretation of the by-law, in which mistake both he and the associa-

tion innocently participated, the by-law standing in place of an agreement between the parties: Powell v. Smith, L. R. 14 Eq., 85; Good v. Herr, 7 W. & S. 253; Meckley's Est., 20 Pa. 478; Peters v. Florence, 38 Pa. 194; Selden v. B. Ass'n, 81* Pa. 336.

3. But the by-law was correctly interpreted. Similar by-laws have been before the courts, and though some Maryland and some English courts have held differently, our own courts, in the absence of words giving the by-law a different meaning, have held in favor of cumulative remedies: Building Ass'n v. Schuller, 3 W. N. 431; Building Ass'n v. George, 3 W. N. 239; Building Ass'n v. Taylor, 15 Phila. 246; Endlich B. & L. A., §§ 411, 452.

4. The act of 1879 is not binding, because its provisions were not accepted: Commonwealth v. Jarrett, 7 S. & R. 460; Lycoming Fire Ins. Co. v. Buck, 4 Leg. G. 182.

OPINION, MR. JUSTICE GREEN:

We are clearly of opinion that the literal meaning of the by-law of this plaintiff, which imposes fines upon members for non-payment of dues or interest, is, that the fine of ten per cent. is imposed upon the aggregate amount of all money due at the end of each month no matter for what cause. This would include fines previously imposed, as well as the amount previously owing for dues and interest. The question then arises whether such a by-law is a valid exercise of the legislating power of the association.

It is not claimed that the general law of 1859, under which the plaintiff was incorporated, confers any special power to impose fines, and hence we assume that the right to enact the by-law in question is merely the general right, which all corporations possess, of enacting suitable by-laws for their government. The provision of the sixth section of the act of 1859 that no premiums, fines or interest on such premiums that may accrue according to the provisions of the act shall be deemed usurious, must be held, so far as fines are concerned, to be limited to such fines as are imposed under by-laws which are lawful. Is then the by-law in question a valid by-law? That depends upon a consideration of its meaning and effect.

We have stated the meaning of this by-law to be that the

fine is imposed each month upon the whole amount due at the end of each month, no matter for what cause. The words are, " each and every stockholder or trustee who shall neglect or refuse to pay his monthly dues or interest as often as the same shall become due and payable shall forfeit and pay the additional sum of ten cents monthly on each and every dollar due by him." It is clear the ten cents penalty or forfeiture is to be paid monthly. This being so, it is to be repeated every month during which the amount due remains unpaid. The effect of this would be that if at the end of December in any year the member was indebted fifty dollars to the association and remained so throughout the year following, he would then owe as a fine twelve times the original penalty on that one default, in other words, one hundred and twenty per cent. upon the principal sum for which default was made. In addition to this he would also owe the full interest he might be paying on the amount expressed in his obligation, no matter how usurious that interest might be. Still further, as the balance is to be struck at the end of each month, the member would owe at that time all that he owed at the end of the preceding month, and, in addition thereto, the interest and penalty for the current month besides the dues; and the account would be made up by charging him with ten per cent. upon the principal, the interest and the fine, due at the end of the preceding month, and adding them to the dues and interest of the current month. If another default was then made, the same process would be repeated at the end of each succeeding month during the continuance of the defaults. It is needless to enter into a detailed computation to show what the aggregate result of such a process would be in any given case. That it is unreasonable, extortionate and oppressive to the last degree must be at once conceded. If the monthly penalty were a hundred per cent. instead of ten it would only be a difference in degree, not in character. Of course if there is an unlimited right to impose, by means of a by-law, any amount of fine or penalty which the association may please to ordain, and the law is powerless to interfere, the results must be accepted, no matter how unjust or oppressive they may be. But we do not so understand the law upon this subject.

The fines in this case were imposed by means of a corporate

by-law. While it may be conceded that as between a corporation and one of its members a somewhat different rule would prevail, from that which would be applicable as between the corporation and strangers, yet there is a limit of authority even when corporators only are affected. We have not been referred to any case in which an unlimited authority to impose fines by a building association, has been declared by any court. A number of decisions adverse to such a right have been made by courts of last resort though none by this court, the direct question having, apparently, never been before us. The legislature of Pennsylvania by the sixth section of the act of April 10, 1879, P. L. 17, enacted that " fines or penalties for the non-payment of instalments of dues, interest and bonus or premiums, shall not exceed two per centum per month on all arrearages." If this plaintiff were subject to this law the question would be settled at once, and all of the fines in excess of two per cent. per month would be undoubtedly illegal. But the plaintiff was chartered under the act of 1859, and it is admitted, or at least found by the court below and the finding not challenged, that it has never accepted the provisions of the act of 1879, and therefore is not subject to it. We do not, however, see that this circumstance is very material, because there is no previous statutory authority to exact any specified fine, and the open question we are considering is, what is the law in the absence of such authority? It is very clear now, and since 1879, that the policy of the law in this commonwealth, is that building associations shall not exact oppressive and extortionate fines from their defaulting members, and we feel amply justified in deciding, as we now do, that a fair inference flows from this legislation that fines in excess of two per cent. per month are oppressive and unreasonable by policy of law. That policy is put in the form of explicit statutory mandate as to all associations which are subject to the operation of the act of 1879, whether by subsequent incorporation, or by previous incorporation. and subsequent acceptance. As to the time anterior to the statute we feel no hesitancy in saying that a monthly penalty of ten per cent. repeated by arithmetical progression with each succeeding default, was clearly oppressive, extortionate and unreasonable, by policy of law and by the teachings of the enlightened con-

science of men. The effect of such a taint upon a by-law is to render it void, and hence we are not called upon to fix upon any rate of fine which would have been reasonable and hold the by-law good for that rate and void only as to the excess. The taint is fatal to its validity and it is therefore without any force. The purpose of the fine is merely to enforce the payment of the dues and interest, and as this is only an obligation for the payment of money, the extortionate character of the penalty becomes the more conspicuous in proportion to the amount by which it exceeds the ordinary rate allowed by law, and by general consent, for the use of money. No sound reason can be advanced for the necessity of exacting so gross a penalty for a mere omission to pay a debt.

The question has been before other courts than ours and has been adjudged in accordance with the principles stated. Thus in Ohio, the legislature of the state expressly authorized building and loan associations to levy and collect from their members, "such sums of money by rate of stated dues, fines . . . . . as the corporation by its laws may adopt." Here would seem to be an unlimited authority to the associations to impose any amount of fines they might see fit, but the Supreme Court of Ohio said, in a case arising under its provisions : " It is to be regretted that the legislature was not more specific in making the grant of power thus intended to be conferred. . . . . . That there are limits, however, beyond which the corporation by its by-laws cannot go, is undoubted. (1) The amount of the fine must be reasonable. (2) It can be imposed only by way of punishment for some delinquency in the performance of a duty which the member may owe to the corporation by reason of his membership. (3) It is unreasonable, and therefore, we assume that the legislature did not intend that more than one fine should be imposed for the same delinquency : " Hagerman v. The Ohio B. & S. Ass'n, 25 Ohio 186 ; Forest City United Land and Build. Ass'n v. Gallagher, 25 Ohio 208.

In Endlich on Building Associations, § 412, the writer says : " But the courts have been unanimous in discountenancing a repeated imposition of the same fine increased every time, upon the principle of arithmetical progression. Thus, where the fine upon each share's dues in arrear was for the first

month 12 cents; for the second month 37 cents; for the third month 75 cents; for the fourth month $1.25, and for every following month 50 cents more than the amount charged in the preceding one, the rate was held to be unreasonable and exorbitant;" citing Second New York Building Association v. Gallier, cited by BIRDSEYE, J., in the Citizens' Mutual Loan and Accumulating Fund Association v. Webster, 25 Barb. 263. Mr. Endlich, in § 413 of his excellent work, says: "The proper measure of fines is the real damage the building association sustains from the failure of a member to pay his dues, which damage is really equal to interest upon the amount together with the proportion coming to it from the then attainable premiums upon the sale of money. The fine should be slightly in excess of this, so as to make it more profitable to the member to pay promptly than to lag behind. . . . . . A fine of from one to two per cent. per month would in nearly all cases be sufficient and just;" citing Ocmulga Building & Loan Association, 52 Ga. 427. While we express no binding opinion upon this subject, as it is not necessarily before us, there is much good sense in the suggestion, and the amount of the reasonable fine intimated in such cases seems to accord very closely with the amount fixed by our own law of 1879.

The argument that only one fine could be imposed, because the legislature could not be presumed to have intended to authorize more than one, is not applicable in the present case, because we are construing not a legislative enactment, which must be enforced as far as may be, but a by-law of a corporation, which is plainly in violation of the principles we have stated and therefore of no effect whatever. In Maryland the same ruling appears to have been made in the cases of Shannon v. Howard Building Ass'n, 36 Md. 383, and Monumental Building Ass'n v. Lewin, 38 Md. 445.

The general rule that by-laws of corporations must be reasonable and must not be oppressive on peril of invalidity is such familiar doctrine that a citation of authorities in support of it is unnecessary. In Endlich on Build. Ass'n, at § 271, it is said: "and all by-laws to be binding, must be in conformity (1) with existing and supreme laws . . . . . ; (2) with the charter, its letter and spirit; (3) with reason and equity:"

Ang. & Ames on Corp., § 347. The same rule exists as to ordinances of municipal governments, as was held in Kneedler v. Borough of Norristown, 100 Pa. 368. For the reasons we have stated, we hold that the by-law of the plaintiff imposing the ten per cent. penalty in question is unreasonable and oppressive and therefore invalid and of no effect.

It is argued, however, that the fines or some of them were voluntarily paid by the defendant and therefore cannot be recovered back. This is not an action to recover back the illegal fines, but a scire facias by the association on the mortgage given by the defendant; and the question is, for what amount shall judgment be entered, or, rather, how much is legally due on the mortgage. There is a clear distinction between a suit to recover back moneys which have been paid by mistake either of law or fact, and interposing as a defence such payments as could not have been recovered on account of their illegality. In the latter class of cases, the payments as a rule are credited on the amount legally due. This is always done in cases of usurious payments where the obligation is still outstanding. We can see no difference in principle between that class of cases and the present. While it may be true that the fines are no part of the mortgage debt, it is also true that they are moneys paid by defendant to plaintiff in consequence of a relation of debtor and creditor existing between them; and if the creditor have no right to receive them as fines, he has no right to receive them in any other capacity than as creditor. Being received by a creditor it is obvious the moneys thus paid must be applied to whatever was legally due. Even if the question depended upon whether the defendant made the payments distinctively as for fines, the evidence is not at all clear that such was the fact. A gross sum was paid of which the fines were a part, but no specific receipt was given and the credits entered in the account were in aggregate sums. But we think this feature of the case quite immaterial; since the payments, so far as the fines are concerned, were for illegal demands which the plaintiff could not claim, and having received them, cannot either in law or in conscience retain them. The question in this proceeding is only how much is legally due upon the obligation in suit, and in determining

that question, credit should be given for all moneys claimed and received as fines.

> Judgment reversed and record remitted with directions that the amount due, if any, upon the mortgage in suit, be determined in accordance with the foregoing opinion.