Acme Realty, Inc. *v.* Lafayette Building and Loan Association, Appellant.

Argued October 26, 1938.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and
RHODES. JJ.

*Ralph S. Croskey,* with him *Theodore L. Reimel,* for appellant.

*Charles Polis,* with him *Philip S. Polis,* for appellee.

OPINION BY PARKER, J., January 31, 1939:

This is a proceeding in equity brought by an owner of real estate encumbered by a building and loan mortgage to compel the mortgagee to satisfy the mortgage. In brief, the claim of the complainant is that the withdrawal value of installment stock given as security for the loan was in excess of the amount of the loan and that the association was bound to comply with its alleged demand that such withdrawal value of the stock be applied to discharge the mortgagor's obligation.

The building and loan association now defends on the grounds (1) that Acme Realty, Inc., was not the owner of the installment stock when demand for satisfaction of the mortgage was made, (2) that even if the realty company was the owner of the stock the withdrawal value of the stock was less than the amount of the loan, and (3) that the realty company failed to show affirmatively that the building and loan association was solvent when demand was made for cancellation of plaintiff's obligation.

To understand the precise points in controversy it is necessary to make some brief reference to the pleadings and proofs. The pleadings consisted of the bill, defendant's answer, and plaintiff's replication. The cause proceeded to final hearing and the chancellor found as facts that Acme Realty, Inc., was then the owner of the stock subject to the lien of defendant and that the withdrawal value of the stock exceeded the amount due on the original loan. The chancellor then entered a decree nisi requiring satisfaction of the mortgage. The court in banc dismissed exceptions to the decree nisi and entered a final decree directing satisfaction of the mortgage.

On August 10, 1922, Joseph J. Sheehan borrowed from the building and loan association $1,500 and pledged as collateral security a mortgage on real estate and eight shares of installment stock intended to be eventually of a matured value of $200 each. The real estate, subject to the mortgage, passed through seven successive owners, finally vesting in Acme Realty, Inc., the complainant, on November 2, 1932. Lafayette Building and Loan Association held an assignment of the stock as security for the loan it had made and, unless the loan was paid in some other manner or other equities appeared, it had the right to apply the value of the stock in payment of the obligation if it so elected. Acme Realty, Inc., showed title to the stock by written assignments originating in the original shareholder. These assignments, however, were not deposited with the defendant and it had no notice of such assignments until the bill was filed. The court below found as a fact that Acme Realty, Inc., was the owner of this stock after the time when the title to the real estate passed to it. As there was evidence supporting such finding, when the court in banc approved it, it had the weight of a finding of a jury in a common law action: *Honan v. Donaldson*, 331 Pa. 388, 390, 200 A. 30; *Carter v. Martin*, 307 Pa. 515, 518, 162 A. 220.

The chancellor also found, approved by the court in banc, that the borrower paid the interest in full on his loan to October, 1933, when the withdrawal value of the stock amounted to $1,512, or more than the principal of the loan. There were involved in those findings certain legal questions as to the manner in which the withdrawal value of this stock should be determined.

On August 10, 1922, the by-laws of the defendant provided that the withdrawal value of the stock should be the monthly dues actually paid and in addition "such proportion of proceeds as the Board of Directors may see proper to allow." The Act of April 10, 1879, P. L. 16, §2, made it mandatory for the association to fix by

by-law the proportion of profits or the rate of interest to be paid a withdrawing shareholder. This by-law did not comply with the mandate of the legislature: *Hockfield v. Woloderker B. & L. Assn.*, 85 Pa. Superior Ct. 336, 340. It is clear that the by-law of 1922 was void and of no effect.

By a by-law enacted April 28, 1930, it was provided: "Stockholders withdrawing voluntarily shall give one month's notice in writing, and shall receive the monthly dues actually paid in on his or her shares." This deprived the withdrawing shareholder of all right to participate in earnings regardless of the profits. It follows as a corollary to the Hockfield case that this by-law was likewise of no effect. The Act of 1879 contemplated a payment of a reasonable proportion of the earnings as profits to withdrawing stockholders. If the power to fix such rate could not be delegated to the board of directors, it follows that the withdrawing stockholder could not be deprived of all share in the earnings: *Marshall v. Penna. Savings B. & L. Assn.*, 115 Pa. Superior Ct. 296, 175 A. 739. The by-laws of a corporation must be reasonable: *Lynn v. Freemansburg B. & L. Assn.*, 117 Pa. 1, 11 A. 537; *Spayd v. Ringing Rock Lodge*, 270 Pa. 67, 113 A. 70.

The position of the defendant is not improved in this respect by The Building and Loan Code, Act of May 5, 1933, P. L. 457, §911, which permitted a borrower to apply the withdrawal value of shares toward the repayment of a loan. The Building and Loan Code repealed the Act of 1879 and further provided by §612 that those shareholders who voluntarily withdraw shall receive in addition to the amounts paid in, less fines or charges, such proportion of the earnings of the association or such rate of interest as may be prescribed by the by-laws of the association provided that "the board of directors may, by general rule or regulation and with the prior written consent of the department, change such proportion of earnings or such rate of interest" and that such

amount should be known as the withdrawal value of shares. There is no evidence or suggestion in the record that any such consent was given by the department. It follows that there was no valid by-law fixing the withdrawal value of shares.

We held in *Lepore v. B. & L. Assn.*, 5 Pa. Superior Ct. 276, and in *Hockfield v. Woloderker B. & L. Assn.*, supra (p. 340), that in the absence of a by-law regulating this matter it was not error to allow to a withdrawing stockholder interest at the lawful rate on the amount paid in by him.

So far our conclusions are in accord with those reached by the court below, but there still remains for consideration the financial condition of this building and loan association. "The fundamental basis governing the right of withdrawal is that the association must be solvent. Insolvency, actual or potential, is incompatible with the right to withdraw. A withdrawing member can obtain no advantage or priority over his fellow members through suit and judgment under such circumstances *(Christian's App.*, supra [102 Pa. 184]) ; a judgment is ineffective for any purpose except that it may hasten further liquidation ...... Solvency in connection with a building and loan association is not a matter of bookkeeping but of sound business judgment. Where an association is insolvent, as that term is generally understood, or where a succession of withdrawals would precipitate insolvency, or have a strong tendency to do so, a judgment should not be entered in an action by a withdrawing member. A judgment under such circumstances would not be effective": *Stone v. Schiller B. & L. Assn.*, 302 Pa. 544, 552, 153 A. 758.

It was later provided by §808 of The Building and Loan Code, Act of May 5, 1933, P. L. 457, §808 (effective July 3, 1933), as follows: "Whenever it shall appear to the department that the affairs of an association are in such condition that the action hereinafter provided in this section is justified, the department may, by

written order issued in the manner provided by law, direct that all payments of dues made on account of installment shares which have not been transferred and pledged to the association as security for loans shall be segregated from the other assets of the association, and that the association shall not grant any further loans, issue any new shares, make any payments on account of withdrawn or matured shares, *or allow any credit for the value of any shares on account of the principal of any loan,* until such order is revoked in writing by the department. Such order of the department shall be known as an order of segregation." (Italics supplied).

On November 23, 1933, the secretary of banking issued an order of segregation prohibiting this association, among other things, from allowing any credit for the value of any shares on account of the principal of any loan until such order was revoked. This action was not begun until January 9, 1934, after such order was issued.

The pleadings did not aver the date upon which the plaintiff demanded that the value of the installment stock be applied in discharge of the loan and the proofs failed to disclose any proper demand for such application prior to the institution of this suit. While there was proof of some informal discussion with the representatives of the building and loan association in October, 1933, as to the withdrawal value of the stock, there was no evidence of a demand upon the association to so apply the value of the stock.

While it later appeared that the stock had been by various assignments transferred to the plaintiff, those assignments were not deposited with the building and loan association nor was notice thereof given defendant. In fact, the complainant was unable to find or produce any such assignments when testimony was taken on the application for a preliminary injunction. On final hearing, the assignments having been found, they were

produced. It is. therefore apparent that the complainant did not place itself in a position to demand the application of the value of this stock to the payment of its loan as it failed to furnish any evidence of the ownership of the shares prior to the time the order of segregation became effective.

While the association, if it so elected, might have appropriated the stock to the payment of the loan by virtue of the assignment of the stock to it as collateral, it was not obliged to do so as it could have elected from which it would seek priority of payment, that is, from the real estate security or the stock: *Hampton v. Congress B. & L. Assn.*, 300 Pa. 501, 150 A. 895; *Landberg v. Equitable Investment Co.*, 292 Pa. 476, 141 A. 302; *Auto B. & L. Assn. v. Hall*, 117 Pa. Superior Ct. 104, 112, 177 A. 581. If the corporation had produced evidence of its ownership of the stock it would have been in a position to have demanded that the stock be applied to the payment of the loan, but this it did not do until too late. In addition, the deeds for the mortgaged real estate were made under and subject to the payment of the mortgage also given as collateral for the loan.

The issuance of the order of segregation and the fact that such order had not been revoked appeared by defendant's answer and these allegations were not denied, although complainant undertook by its replication to reply to the new matter in the defendant's answer. The chancellor was, therefore, required to accept such averments as admitted: *Allegany Gas Co. v. Kemp*, 316 Pa. 97, 174 A. 289.

While the complainant offered a statement of the financial condition of the association published by it in the early part of 1933 as evidence of solvency, the defendant had denied that such was its true condition. In any event, when the order of segregation was issued and until it was revoked, the association was not permitted to apply the value of the installment stock in cancellation of the mortgage for such was the express

provision of the Building and Loan Code. In addition, the condition of the building and loan association was such, as evidenced by said order, that it was unfair to other stockholders to permit the plaintiff to obtain a judgment and force liquidation. Such is the effect of the statute.

*Citizen's National Bank of Irwin v. Irwin B. & L. Assn.*, 316 Pa. 536, 175 A. 399, and *Palmer v. Dela. Co. Bldg. Assn.*, 101 Pa. Superior Ct. 370, relied upon by the appellee, have no bearing upon the questions here involved. In the Citizens National Bank case, a certificate of stock had been issued by the building and loan association and was outstanding when the loan was made by the building and loan association and such stock was taken as collateral without delivery to it of the certificate. What was held in that case was that under the Uniform Stock Transfer Act the rights of the assignees of the certificate in possession of the certificate were superior to those of the association. In the Palmer case all that was held was that where a suit was brought in the name of a legal plaintiff, to the use of another, the right of the legal plaintiff alone was in question.

Decree reversed at the costs of the appellant and the bill is dismissed.