## Dugan, Appellant, *v.* Firemen's Pension Fund of Philadelphia.

Argued November 19, 1952. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused February 13, 1953.

*Philip Richman,* with him *Harry A. Cantor* and *Richman & Richman,* for appellants.

*Charles W. Sweeney,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 14, 1953:

The five minor children of Joseph Dugan, deceased, by their mother, Margaret Dugan, as guardian, and Margaret Dugan as widow, brought an action of assumpsit against the Firemen's Pension Fund of Phila-

delphia, a corporation, to recover a pension of $50 per month for the widow and $40 per month for the minor children from the date of Dugan's death on November 8, 1943. The case was heard by a judge without a jury who found in favor of the defendant. From the judgment entered following the dismissal of their exceptions, plaintiffs appealed to this Court which upon stipulation of counsel remanded the case for additional findings by the trial court. Following the adduction of additional testimony by the plaintiffs, the lower court made supplementary and definitive findings resulting again in the entry of judgment for the defendant. The appeal is now before us for final determination.

Joseph Dugan, the deceased, was a hoseman attached to a fireboat on the Delaware River. On March 8, 1942 he responded to a fire on a steamship. While fighting the fire, a guide rope was placed around his body as he descended or was lowered into the hold of the ship. When he returned home from work that day, he complained to his wife of pains in his stomach. Shortly thereafter lumps appeared in his stomach. On March 31, 1942 Dugan went to the Philadelphia General Hospital where a subtotal gastrectomy was performed upon him. Between March 31, 1942 and July 31, 1942 he spent periods of time in the Philadelphia General Hospital and in a convalescent home. He returned to work on December 16, 1942. From February 18, 1943 until March 1, 1943 he was out of work with an attack of the grippe. On September 10, 1943 he was readmitted to the Philadelphia General Hospital with an acute exacerbation of abdominal symptoms. On September 14, 1943 he was transferred to the convalescent home, but on October 27, 1943 he was brought back to the Philadelphia General Hospital with an intestinal obstruction. He died on November

8, 1943. This was eighteen months after the accident. The cause of death was given as post-operative bronchopneumonia.

Plaintiffs claimed that the guide rope placed about Dugan's body when he descended or was lowered into the hold of the ship strained or aggravated a physical condition created by an ulcer operation performed in November of 1938, thereby causing his death; and the court below so found.

However, the court in entering judgment for the defendant found that Section 3 of Article XI of the defendant's by-laws was designed to limit recovery to those situations where the death is caused solely and exclusively by accident in the line of duty and to prevent recovery where death is due to the aggravation of some preexisting, abnormal physical condition or ailment.[1] It is unnecessary to consider and pass upon this ruling because the lower court's disposition of the case will be upheld upon its further conclusion of law that the plaintiffs were barred from recovery under the provisions of Section 5 of Article XI of the by-laws. This section reads as follows: "The widow and the dependent child or children of a member who was killed while in the discharge of his duty, *or who died within sixty (60) days after being injured as a direct*

---

[1] Section 3, Article XI of the by-laws reads as follows: "Whenever in these By-Laws reference is made to an injury or injuries which result either in rendering a member of this association incapable of performing the duties of his position or in his death, it shall be construed to mean that such injury or injuries shall not consist in any abnormal condition of the body, whether external or internal, or any disease brought about by any over-exertion or exposure to the elements that may be incident to the proper discharge of the duties of the position held by the member, which duties he is expected not only to perform, but to be able to perform, and any such bodily condition or disease so brought about shall not entitle the member or his dependents to a pension."

*result of an injury or injuries received while a member and while in the actual discharge of his duties,* shall be entitled to apply for a pension; such application shall be referred to a committee of three (3) members of the Board of Control who shall consider the application and report thereon to the Board of Control as soon as possible." (Emphasis supplied).

Appellants contend that this by-law is invalid as repugnant to the provisions of the defendant's charter, and as unreasonable. The charter provisions relied on are: "2. The purposes for which the said Association is formed are the accumulation of a permanent fund from the monthly dues of its members, from legacies, bequests, gifts and other sources, for the purpose of placing on the pension list such members as may be retired from the rolls of the Fire Bureau of the City of Philadelphia on account of chronic ailment, permanent disability through accident, or by term of service, and for the widows, or dependent parents and orphans of members who may be killed or die from injuries received whilst in the discharge of their duty. . . 5. There are no shares subscribed or to be subscribed, for the members are to pay in the common fund certain fixed sums to be known as dues or assessments, which are to be levied monthly for the purpose of accumulating, maintaining and upholding the said permanent fund referred to in Article 2 of this Charter.".

By-laws prescribing the amount of pensions payable and the circumstances and conditions under which they will be paid certainly are not repugnant to but in aid of and necessarily incident to the carrying out of the corporate purposes. This is recognized in Article II of the by-laws which states: "The object of this Association is to accumulate a fund from the dues of its members and from legacies, bequests, gifts, and

other sources, in order that from this fund pensions may be paid *under certain* conditions to members of the Association and to families of deceased members. The amount of pensions, *circumstances under which they shall be paid,* and the parties to whom they shall be paid, to be determined by these By-Laws." (Emphasis supplied). Appellants do not attack this by-law. Nor could they successfully do so since the charter contains no provisions limiting or prescribing the manner in which its purposes are to be achieved.

By-laws of a corporation must be reasonable and consistent with the corporate objectives expressed in its charter. The courts will declare invalid any by-law that is clearly unreasonable. See *Spayd v. Ringing Rock Lodge et al.,* 270 Pa. 67, 113 A. 70; *Lynn v. Freemansburg B. & L. Association,* 117 Pa. 1, 11 A. 537; *Hibernia Fire Engine Co. v. Commonwealth ex rel. George Harrison,* 93 Pa. 264. On the other hand, as said by this Court in the *Hibernia Fire Engine Co.* case: ". . . Courts, in construing by-laws, will interpret them reasonably, if possible, not scrutinizing their terms for the purpose of making them void, nor holding them invalid if every particular reason for them does not appear: . . .". We are of opinion that the by-law here in question, Section 5 of Article XI above quoted, cannot be held so manifestly unreasonable as to be declared invalid. And since the death of the member occurred long after the expiration of the specified period of sixty days, the plaintiffs were not entitled to recover.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Joseph Dugan was injured in line of firemen's duty on March 8, 1942. He died on November 8, 1943, "as a result of the injury acting upon a former condition."

It is not questioned that the proximate cause of Dugan's death was the violence done his body when he was lowered into the hold of a burning ship with a guide rope tightly knotted around his waist.

The charter of the Pension Fund specifically declares that one of the purposes of the Fund is to provide "for the widows, or dependent parents and orphans of members who may be killed or die from injuries received whilst in the discharge of their duty." Thus, under the charter there can be no question that Joseph Dugan's surviving family is entitled to the benefits provided by the Fund in death cases. However, blocking this reasonable and humanitarian delivery of benefits stands Section 5 of Article XI of the By-Laws which requires that service-connected death must occur within 60 days following the injury causing the death.

This by-law is not only unreasonable but it challenges the working of the undeviating law of cause and effect. Hospitals, military and civil, contain innumerable case histories of patients who succumbed to the invader Death months and years after he first crossed the threshold. It is common knowledge that the poison gas which entered the lungs of many soldiers in World War I did not finish its lethal work until years after it had started its grim, mordant process of destroying the lung cells.

That the life line of survival should be kept operating a year or two after the shipwreck is not so extraordinary a phenomenon as to be adjudicated unhappenable. The injuries Joseph Dugan incurred on March 8, 1942, never healed; the lowering into the hold of the burning ship never ceased until Joseph Dugan was lowered into his grave.

Section 5, Article XI of the By-Laws is repugnant to the Fund's charter and therefore invalid. In the

case of *Roblin v. Knights of the Maccabees*, 269 Pa. 139, the defendant association denied death benefits to the wife of one of its members who was declared dead under an Orphans Court procedure seven years after he disappeared. A by-law declared that mere absence, no matter for what period, could not be accepted as proof of death. But the judgment of the lower court in the plaintiff's favor was approved by this Court, which said: "A by-law to be valid must be reasonable in character (19 R.C.L. p. 1195), but here it is not, as affecting an outstanding certificate (Sambert v. Knights of Modern Maccabees, 158 Mich. 568) especially that of one who had already been absent for two years. True, the certificate provides, that the member shall abide by by-laws thereafter enacted, and that is valid insofar as his rights depend upon by-laws: but substantial rights which rest upon the contract cannot be abrogated by new by-laws, even where the power to make them is reserved. . . The right to rely upon the presumption of death is substantial, as it may be the only means by which a beneficiary can ever receive, and a policy-holder cannot be deprived of such as by a new by-law."

In *Crumpton v. Pittsburg Council*, 1 Pa. Superior Ct. 613, the Superior Court held: "If the subject-matter of a by-law is clearly alien to the nature of a corporation and is a departure from the purpose, such a by-law is ultra vires, and void."

A by-law of a firemen's pension fund which denies death benefits to the family of a fireman who loses his life in fighting fire is certainly a departure from the purposes of the Pension Fund.

The principle of law and justice which I assert in this case is clearly announced in Corpus Juris Secundum, as follows: "By-laws inconsistent with the char-

ter, articles of association or incorporation, or governing statute are ultra vires and void.

"By-laws of a corporation must be consistent both with the terms and with the spirit and intent of the charter or governing statute, and where they are contrary to or inconsistent with the charter, articles of association or incorporation, or governing statute, they are ultra vires and void, even though they may have been unanimously assented to by the stockholders or members. . . .

"Void also is any by-law, contrary to the express or implied provisions or limitations of the charter, articles of association or incorporation, or governing statute, in any way changing the rights or liabilities of the stockholders or members." 18 C.J.S. 604

The 60-day provision in the by-law under discussion is an arbitrary period, entirely unrelated to reason, circumstance, logic or fairness. If Joseph Dugan had died 61 days after the accident, the defendant Pension Fund would undoubtedly have interposed the same by-law as an obstacle to payment, and it would have required no argument in such an instance to expose the absurdity of such a defense, and the unreasonableness of such a by-law. The fact that the death occurred twenty months, instead of 61 days after the injury does not sever the line of irrefutable argument any more than it severs the inexorable chain of cause and effect.

The charter of an association is superior to its by-laws as the constitution of the State is to its statutes, and when the by-law so obviously contravenes the letter and the spirit of the charter, it is as void as a statute which seeks to place at naught a direct provision of the Constitution. Whether a fireman does or does not die as a result of a duty-incurred disability is a medical question, not one to be decided categorically by a

438 

group of members as unfamiliar with medicine as they are apparently unaware of the limitation imposed upon them by the very charter of their own institution.