## Advance Beneficial Order's Assigned Estate.

*Beneficial associations—Insolvency—Assignment—Distribution of assets—Escheat—Act of May 2, 1889, P. L. 66.*

1. When a beneficial association becomes insolvent, makes an assignment of its property for the benefit of creditors and is dissolved, the property in the hands of the assignee or in the hands of the subsequent receiver appointed by the court, is affected with a trust primarily for the creditors of the corporation and subject to their rights, and secondarily for the members of the order in proportion to their interest therein; and the right of each holder of a certificate of membership in the association to participate in the distribution of the assets, becomes vested at the date of the assignment.

2. Where the creditors of an insolvent beneficial association are all paid, and the certificate holders who have proved their claims have received a dividend of twenty per cent, and subsequently after other funds are realized and are in the hands of the receiver, the court makes an order directing certificate holders to again prove their claims, and thereupon a large number of those who formerly participated again prove their claims, and an almost equally large number fail to do so, and subsequently the court makes a further order that all claims shall be proved by a certain date, or shall be forever barred, and after a few other claims are proved, distribution is made of ten per cent on the claims proved, the fund remaining undistributed in the hands of the receiver, will after the expiration of seven years be escheated to the commonwealth under the act of May 2, 1889, P. L. 66, if the holders of the unproved certificates have remained unknown for that period of time.

Argued March 13, 1911. Appeal, No. 272, Oct. T., 1910, by Gotthold Haug, from order of C. P. No. 4, Phila. Co., Dec. T., 1908, No. 1,985, on case stated for the commonwealth in proceedings to escheat, In re Assigned Estate of Advance Beneficial Order. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER. JJ. Affirmed.

Petition in escheat.

A case stated was agreed upon as follows:

The parties to this case stated, by their attorneys, agree to the following facts:

The Advance Beneficial Order was a corporation under the laws of Pennsylvania, a fraternal beneficial organization. It had within it, subordinate bodies or lodges; used ritualistic ceremonies, collected assessments from its members and paid sick benefits; issued certificates of membership which undertook to pay to the holder thereof $100 in one year out of its benefit and reserve funds. On November 27, 1891, the Advance Beneficial Order made an assignment for the benefit of its creditors to A. E. Stockwell, which was duly recorded at Philadelphia in Deed Book T. G. No. 94, page 503. All the proceedings relating to said assigned estate were thereafter had in court of common pleas No. 4 of Philadelphia county, September Term, 1901, No. 990.

The assignee's first account was filed August 9, 1892, and referred to John M. Campbell, Esq., as auditor, before whom claims were made by certificate holders numbering 4,808, who had paid into the order an aggregate amount of $231,307.50. On September 19, 1892, the auditor filed an interlocutory report in which he set forth "That all demands of the creditors against the Order should be paid in full and that a dividend should be paid to the certificate holders who had made proof of their claims before him and who had been found to be in good standing in the Order at the time of the assignment . . . .," and awarded a dividend of twenty per cent to the said 4,808 certificate holders then proving their claims, upon the basis of the amount which each had paid into the order, which dividend was paid.

The claims of the 4,808 claimants and the amounts paid by each were particularly set forth in the report of the auditor and filed of record in the above court.

On April 26, 1899, the court dismissed Stockwell as assignee and appointed Charles Biddle, Esq., as receiver of

the Advance Beneficial Order. The assignee's second account was thereupon filed by his surety, the Citizens' Trust & Surety Company, and on June 16, 1899, referred to said auditor, who on December 5, 1899, filed a second report which was referred back to the auditor who thereupon filed a supplemental report, which report was on February 10, 1900, confirmed in the following opinion by ARNOLD, P. J.:

We think it is to the best interests of the creditors of the above order that the litigation on its affairs should be brought to an end, and the creation of additional charges and the diminution of the funds of the order should cease. The payment of a dividend of twenty per cent was awarded on September 19, 1892, and by a report of the auditor filed June 15, 1893, the assignee was given a credit for $50,116.50, paid to the creditors. It would be impracticable at this late day to revoke that credit and require proof of all the payments on account of that dividend, as well as unjust to the surety of the assignee who has absconded. We will therefore confirm the auditor's report and direct the balance in the hands of the receiver to be held by him until the final disposition of the property of the Penn Trust Company out of which it is expected that the Advance Beneficial Order will receive a dividend. Then we will refer the matter to an auditor to take proof of the claims against the order and dividends will be awarded only to those who present and prove their claims.

After due and legal notice by advertisement in the Legal Intelligencer, in the Philadelphia Call and the Philadelphia Inquirer, the auditor held meetings for the purpose of taking proof anew of claims against the fund in accordance with Judge ARNOLD's opinion. In addition to the advertisement required by court, the auditor mailed notices to the president, secretary and treasurer of each lodge of the said Advance Beneficial Order reciting the proceedings and setting forth that dividends were only to be awarded to those who presented proof of their claims anew. Certificate holders to the number of 1,869 ap-

peared and again proved their claims before the auditor, who on June 7, 1901, awarded to them a dividend of ten per cent without prejudice, however, to certificate holders who had not presented their claims before the auditor. By reason of the payment of the dividend of ten per cent and the publicity given to the proceedings, 614 additional certificate holders appeared, and on November 23, 1901, a dividend of ten per cent was awarded to them. Owing to the lapse of time, many of the members of the order had lost, destroyed or mislaid their certificates of membership, but a form of affidavit was prepared by means of which any such member desiring to prove his claim was enabled so to do.

Notwithstanding these efforts made to bring about proof of the claims, only 2,483 of the original 4,808 certificate holders proved anew and received the second dividend of ten per cent, and 2,325 certificate holders, who appeared before the auditor at the first distribution, failed to prove anew their claims and receive the second dividend of ten per cent. The court thereupon ordered that the receiver hold the balance of the fund in order that opportunity might be given to those who had originally proved their claims to come in and make proof anew and participate in the second dividend of ten per cent.

The receiver thereafter prepared a list of the 2,325 original certificate holders who had proved at the first audit and who had subsequently failed to appear and reprove their claims, in accordance with the orders of the court above recited. To every name in this list that appeared in the Philadelphia directory, the receiver sent a written notice of the requirement of court to prove their claims and notifying each that a dividend of ten per cent would be paid upon proof of their membership in said order. In consequence of these efforts, 385 of the original 4,808 certificate holders appeared and proved their claims and on March 1, 1907, were awarded and paid the second dividend of ten per cent. One thousand nine hundred and forty of the original 4,808 certificate holders (a list of

whose names and the amounts paid by each were set forth in the receiver's report) failed to appear at the second audit and prove their claims anew and receive the second dividend of ten per cent.

The petition of the receiver being filed showing these facts, the court entered the following decree thereon:

And now, March 1, 1907, upon consideration of the petition of Charles Biddle, Esq., receiver, this day filed, the court orders:

1. That out of the fund now in his hands the said receiver shall repay himself for the following expenditures: (a) Clerk hire to Frank A. McManus, for preparing list of certificate holders who failed to present and prove their claims at the second audit, $150; (b) printing postal notices to be sent to the said certificate holders, $54.50; (c) postage on notices, and clerk hire in directing same and in resulting correspondence, $250; total, $454.50.

2. That out of the fund now in his hands the said receiver shall pay to the certificate holders of the Advance Beneficial Order, who, having had their claims allowed by the report of the auditor, John M. Campbell, filed December 23, 1899, but having failed subsequently formally to prove their claims before said auditor pursuant to the order of court made February 10, 1900, have since June 7, 1901, presented their claims and proofs to the said receiver, and who are mentioned by name in the schedule attached to the petition of said receiver filed this day, a dividend of ten per cent on the amount of their respective claims, the sum thus payable to each being specifically indicated in the said schedule (amounting in number to 2,868).

3. That on Monday, April 22, 1907, at one o'clock P. M., in room 446, city hall (court room G), the court will hear a motion for final distribution of the fund of $12,382.25, remaining in the hands of the receiver after the deduction of the payments hereinbefore directed to be made, at which time and place all parties claiming to participate in such distribution are required to appear and prove their claims, except—(a) Those certificate holders of the Ad-

vance Beneficial Order whose claims were presented to and allowed by the auditor, John M. Campbell, Esq., pursuant to the order of court made February 10, 1900, and who are enumerated by said auditor in his report filed March 18, 1901, or in the supplements thereto; (b) those of the said certificate holders whose claims were allowed by the said auditor in his report filed December 23, 1899, and who have since June 7, 1901, presented their certificate or other proofs to the receiver, their names being set forth in the schedule attached to the petition of the said receiver filed this day.

And that with the exception of the persons falling within the said classes (a) and (b), all parties claiming against the estate of the said The Advance Beneficial Order, remaining in the hands of the receiver who shall fail to present and prove their claims in open court at the time fixed by this order, shall be forever barred from all participation in the distribution of the said fund.

4. That the prothonotary shall give notice to all parties in interest of the provisions of clause 3 of this order by advertising an abstract thereof twice each week for four successive weeks in the Philadelphia Record and the Evening Bulletin (the first advertisement to be inserted in the issues of said newspapers of March 18, 1907; and one each week for four successive weeks in the Legal Intelligencer (beginning on March 22, 1907), and that the cost of such advertisement shall be paid out of the fund in the hands of the receiver.

R. N. W.

The provisions of clause 3 of the decree of March 1, 1907, were duly advertised as directed and on April 22, 1907, the court sat and heard proof of claims made pursuant to its decree of March 1, 1907, and eighteen claims were thereupon allowed and awarded by the court the second dividend of ten per cent., there remaining 1,922 certificate holders of the original 4,808 who had proved their claims at the first audit but who thereafter failed to appear and prove in accordance with the order of court.

On July 27, 1907, the said receiver filed a petition, wherein he prayed that the undistributed balance in his hands be paid into court and that he be discharged as receiver of the Advance Beneficial Order, whereupon the court entered the following decree:

And now, July 27, 1907, the court upon reading the petition of the receiver of the Advance Beneficial Order filed this day, do order, decree and direct that the said receiver shall pay into the depository of the court the funds now remaining in his hands after deducting therefrom an additional compensation for his services the sum of $750 with a fee of $250 for his counsel, and he shall forthwith file with the court an account setting out the disbursements of the money and payments of the dividends made during the time that he has been acting as receiver of the said The Advance Beneficial Order.

By the Court,<br>CHAS. Y. AUDENREID, J.

On October 3, 1907, the receiver paid into court the sum of $12,604.40 and filed his account, wherein he set forth inter alia, "Note. The said balance of $12,604.40 is composed of the sum of $12,567.60, the amount payable to certificate holders whose claims were proved before the auditor upon the payment of the twenty per cent dividend but who failed to come in and claim the subsequent dividend of ten per cent, and the sum of $36.80 due to the following persons to whom checks were drawn under the award of the Auditor, which checks were never presented for payment. The Receiver was unable to find any trace of the person to whom the checks were payable. The checks were as follows:

"Dated

"No.  14. Albert E. Minor July 1st, 1901, for $ 5.40
   37. Sarah E. Mellor " " " " 5.40
  189. Annie Dougherty " " " " 5.60
  221. Gustave Lehman " " " " 4.60
  227. C. H. Rowe " " " " 5.20
  656. Frank Altemus " 21 " " 10.60"

It is hereby agreed between counsel that the statement in this note to the receiver's account, to wit, "The said balance of $12,604.40 is composed of the sum of $12,567.60, the amount payable to certificate holders whose claims were proved before the Auditor upon the payment of the 20 per cent dividend but who failed to come in and claim the subsequent dividend of 10 per cent," is the receiver's expression of his opinion only and is not to be construed as a fact binding on any party to this case stated.

On November 1, 1907, Charles S. Wesley was appointed deputy escheator of Advance Beneficial Order and on December 15, 1908, filed his petition in common pleas No. 4, December Term, 1908; No. 1,985, wherein he prayed that the court determine whether there has been any escheat of the said fund of $12.604.40, and in what.manner and for what cause said escheat has occurred and the value thereof, to which petition an answer was filed on January 23, 1909, by Gotthold Haug, a certificate holder, in his own behalf and in behalf of the holders of 1,800 other certificates represented by Franklin L. Lyle. The said Gotthold Haug and the holders of 1,800 other certificates for whom he acts, had duly appeared before said auditor, reproved their claims in accordance with the opinion of Judge ARNOLD and had been awarded and paid the second dividend of ten per cent.

There has been paid to the holders of 2,886 certificates who paid into the Advance Beneficial Order $142,500, two dividends of twenty and ten per cent, respectively, upon the sum thus paid in by said certificate holders, and there has been paid to the holders of 1,922 certificates who paid into the Advance Beneficial Order $88,807.50, one dividend of twenty per cent. The said 1,922 certificate holders whose names are set forth on the records of the court have been unknown for the space of seven years, and the amount of the fund, if any, payable to them is sought to be recovered for the commonwealth of Pennsylvania by the said deputy escheator.

The following questions are therefore submitted for the determination of your honorable court:

1. Does the fund of $12,604.40, in the possession of your honorable court, escheat to the commonwealth of Pennsylvania?

2. If the entire fund of $12,604.40 does not escheat to the commonwealth of Pennsylvania, does any part thereof escheat, and if so, what amount?

3. If no part of said fund escheats to the commonwealth of Pennsylvania, then to whom is said fund distributable?

4. If a part of said fund escheats to the commonwealth of Pennsylvania, to whom is the balance thereof properly distributable?

If the court shall be of the opinion that the entire fund of $12,604.40 has escheated to the commonwealth of Pennsylvania, then a decree shall be entered in favor of the commonwealth of Pennsylvania in accordance with the act of assembly in such case made and provided.

If the court shall be of the opinion that no part of said sum of $12,604.40 has escheated to the commonwealth of Pennsylvania, then a decree shall be entered awarding distribution of said fund to such certificate holders as the court may determine are entitled to share therein in proportion as their respective interests have been determined.

If the court shall be of the opinion that a part of said fund of $12,604.40 has escheated to the commonwealth of Pennsylvania, then a decree shall be entered awarding the amount thereof to the commonwealth of Pennsylvania and directing distribution of the balance of the fund, if any, after the payment to the commonwealth, to such certificate holders as the court may determine are entitled to share therein in proportion as their respective interests have been determined.

Each party reserves the right of appeal, it being expressly agreed by the parties hereto that this is a test case framed for the purpose of determining the final distribution of the fund in the possession of the court and should

the court determine the questions involved in favor of the commonwealth of Pennsylvania acting by its deputy escheator herein an appeal taken by the said Gotthold Haug or any other one or more of the 2,886 certificate holders shall be a test appeal to determine the rights of all of said 2,886 certificate holders and any judgment of the court of last resort by which such appeal may be heard shall determine the respective rights of all of said 2,886 certificate holders notwithstanding said certificate holders may have individually taken no appeals.

WILLSON, P. J., filed the following opinion:

The main question involved in the case relates to the right of the commonwealth to an escheat of a fund deposited in court, which consists of money representing the pro rata amount which would have been awarded, if they had appeared a second time, to certain holders of certificates of membership in the Advance Beneficial Order who presented their claims and established their ownership at the first auditing, but later failed to appear and make demand for further distribution. Awards were originally made by the auditor to these certificate holders when they thus made their claim and the amounts of these awards were paid. Subsequently, in proceedings before the same auditor and by action of the receiver appointed to succeed the original assignee, who was discharged by the court, pro rata payments were made to such holders of certificates as presented themselves and made demand for the same, but no distribution was made to such certificate holders as failed to appear and present their claims after the first audit. By this course of proceeding, it resulted that there remained in the hands of the receiver a sum of money amounting to $12,604.40, which has never been distributed. By order of court, this sum was paid into court, where it still remains. The commonwealth now asserts the right to escheat this money, and relies upon the provisions of the Act of assembly of May 2, 1889, P. L. 66, as the basis of its right.

The second section of the statute specifically relates to cases of money or other property deposited in court or in the hands of any depository, receiver or other officer of a court, and it provides that where the original owner of such money or property shall be unknown for a period of seven years, the same shall escheat to the commonwealth, "subject to all legal demands for the same."

The third section of the statute covers cases in which trustees or other persons holding property in a fiduciary capacity shall file an account of the same in any court, and it shall appear that the cestui que trust or beneficial owner in any particular case shall have been and be unknown for a period of seven years, then so much of such property as shall belong to such cestui que trust or beneficial owner shall escheat to the commonwealth, "subject to all legal demands on the same."

Before taking up the question as to whether or not the case in hand falls within the embrace of either of these statutory provisions, we may profitably consider the effect of two orders of this court which were made on February 10, 1900, and March 1, 1907, respectively. Without quoting these orders, it may be said without qualification that they were intended to debar, and by their terms, did debar, from participation in the distribution of the funds arising from the assets of the Advance Beneficial Order all such holders of certificates to whom awards and payments were made under the first audit as failed to present themselves later and prove their claims or establish their status. There were reasons in the mind of the court why the integrity of these claims should be made clear, and somewhat drastic means were adopted to accomplish that end. Upon subsequent reflection, however, we are forced to reach the conclusion that these orders cannot be relied upon as sufficient grounds, upon which to hold that those holders of certificates whose ownership had been established by proper proofs before the auditor, and to whom the amounts awarded by him had been paid, had no right to share in subsequent distributions, unless they again

made the proof of their claims which they had already made before the court's officer, and which the court had recognized and approved by ordering the payment to them of the amounts awarded by the auditor.

That the orders referred to are to be given such effect is claimed by the certificate holders who resist the demand of the commonwealth that the fund in question shall be escheated. These certificate holders contend that this fund should be treated as an undistributed portion of the assets to be divided among those who have appeared and had their status recognized as established since the first audit.

Two obstacles, in our opinion, stand conclusively in the way of that treatment of the case. One has already been referred to, viz.: the fact that in effect it has been adjudicated that the certificate holders who have failed again to appear and prove their claims, since the two orders intended to require such reappearance were made, were actually the holders of certificates and had made the requisite proof of their ownership.

This adjudication, as it seems to us, established the right of these certificate holders to their pro rata shares in the fund which should subsequently be realized from the assets and distributed under the supervision of the court. We fail to see how it was competent for us thereafter to require that that should be shown which we had already decided was sufficiently shown.

Another obstacle in the way of the opposing certificate holders—and it appears to be an insurmountable one—is to be found in the admissions in the agreement for the case stated to the effect that the holders of certificates whose claims were allowed at the first audit but have since failed to appear, were in point of fact, holders of certificates, and actually presented their claims before the auditor and made proper proof thereof.

That is the effect of the admissions, and, therefore, for the purpose of the case as it affects the opposing holders of certificates, all doubt must be regarded as removed

with reference to the integrity of all the claims originally allowed by the auditor, or, in other words, as to the fact that the certificate holders originally recognized did actually hold and own certificates and make proper proof thereof. It therefore follows that these holders not only owned the certificates but, also, that they had been judicially declared to be entitled to share in the distribution of the assets of the defunct order, and, besides, that it is admitted by those objecting to the escheat that the judgment made was in accordance with the facts.

It, therefore, necessarily results, as we think, from what we have thus far said that the undistributed fund now in the hands of the court's depository belonged to the holders of certificates who have failed to appear a second time and claim it. Indeed, we do not now see why it might not have been, or be, awarded to them, pro rata, upon the basis of the first distribution. However that may be, the money was their own, subject, of course, to such formalities and deductions for expenses as the law and practice of the courts make necessary to enable distribution and payment to be made.

Upon the basis of this conclusion, it only remains necessary for us to consider whether an escheat of the money in hand to the commonwealth should be declared and ordered.

Upon this point, we do not hesitate. That the certificate holders whose rights are to be affected have not been known, that is, have not made themselves known, for a period of more than seven years prior to the institution of these proceedings is beyond question, under the agreement for the case stated.

If it should be said that the admissions in that agreement would not bind the certificate holders who failed to appear a second time, as before stated, it may be replied that it is within the knowledge of the court that for more than seven years various efforts to reach them have been made under the direction of the court in vain, and, besides, that by notice given under the order of the court

those holders of certificates have had a full opportunity to present themselves and resist the demand of the commonwealth. Not one of them has made his appearance.

Were these nonappearing certificate holders the "original owners" of money deposited in the custody of the court—a case provided for in the second section of the statute before mentioned—or were they "cestuis que trustent or beneficial owners" of property covered by an account filed in court by a trustee or other persons holding the property in a fiduciary capacity—the case provided for by the third section of the same statute?

We regard the situation of the nonappearing holders as substantially covered by either section.

Without too much liberality of construction, it seems to us that we might hold that the certificate holders in the order were, in a real and proper sense, the original owners of the fund in question, which was in the hands or custody of the court's "depository." That would certainly be a reasonable view of the matter, after the assignment had been made by the association, if not before. It is not, in our judgment, however, necessary to go at length into a discussion of that question, for the reason that the demand of the commonwealth seems to have a sure foundation in the provisions of the third section of the act. The fund claimed by the commonwealth was accounted for by one who held it in a fiduciary capacity. He was, in fact if not in name, a trustee. If our previously expressed conclusions as to the relation of the nonappearing holders to the fund in question are correct, it is equally true that they were cestuis que trustent or beneficial owners of the fund.

If not before, at least from the time when their claims were allowed and paid at the time of the first audit, they occupied such a position in the most real and substantial sense. It is the substance of the relation which should be regarded in the case. The mere name is a matter of no moment.

It would be a waste of time and words to enlarge upon the point. We regard it as too clear to require argument

that, as to the fund realized from the assets of the order, the certificate holders were the cestui que trustent or beneficial owners thereof, subject, of course, to the claims of the creditors, who are not now to be considered. A mere statement of the case is, in our judgment, all the argument necessary.

It is our judgment that the entire fund of $12,604.40 must escheat to the commonwealth. A proper decree may be presented to the court for the purpose of carrying this judgment into effect.

*Error assigned* was the order of the court.

*George J. Edwards, Jr.,* with him *Franklin L. Lyle,* for appellant.—The law of escheat is well settled that the state takes only such interest as the former owner of the property had therein and takes it subject to all liens and incumbrances upon it: Casey v. Inloes, 1 Gill (Md.), 430; Jones v. Chiles, 4 J. J. Marsh (Ky.), 610.

That the orders could not even be overturned at the present day even in a direct proceeding is shown by the decision of this court in Old Tacony Road, 32 Pa. Superior Ct. 444.

The decrees entered by the court were, however, proper as shown by the authorities both of Pennsylvania and other states: Lease v. Ensminger, 5 Pa. Superior Ct. 320; Guenther's App., 4 W. N. C. 41; Kline's App., 86 Pa. 363; United Mut. Fire Ins. Co., 22 R. I. 108 (46 Atl. Repr. 273); Attorney General v. Continental Life Ins. Co., 88 N. Y. 77; Coe v. Washington Mills, 149 Mass. 543 (21 N. E. Repr. 966).

*Chas. S. Wesley,* with him *Ernest L. Tustin,* for appellee.

OPINION BY PORTER, J., October 9, 1911:

The parties having entered into an agreement in writing, which was submitted as a case stated in the court below

and appears in this report, it is unnecessary to recite the facts in this opinion. The opinion of the learned judge of the court below, which will also appear in the report of this case, fully vindicates the conclusion at which he arrived. When the Advance Beneficial Order became insolvent, made an assignment of its property for the benefit of creditors and was dissolved, the property in the hands of the assignee and which subsequently passed to the receiver appointed by the court below was affected with a trust, primarily for the creditors of the corporation and subject to their rights, and secondarily, for the members of the order in proportion to their interest therein: Com. ex rel. v. Order of Solon, 192 Pa. 498; 2 Story's Equity Jurisprudence, 603. And the right of each holder of a certificate of membership in the association to participate in the distribution of the assets became vested at the date of the assignment, when the property passed under the jurisdiction of the court for distribution: Hibernia Fire Engine Co. v. Com. ex rel., 93 Pa. 264. All creditors of the Advance Beneficial Order, other than the holders of certificates of membership, had been paid in full out of the balance remaining in the hands of the assignee at the first account, and the auditor at that time had awarded a dividend of twenty per cent to 4,808 certificate holders, members of the order, who then proved their claims before him, and the report of the auditor was confirmed by the court and the dividend paid to all those holders of certificates of membership.

The court, in 1899, dismissed the assignee and appointed a receiver to take charge of the estate. The entire fund realized from the settlement of the estate, subsequently to the first distribution, which fund the court was called upon to distribute, was sufficient to pay ten per cent upon the claims of the entire 4,808 certificate holders. A second audit was had at which the holders of certificates of membership were required to present and prove their claims anew and to such as did so a dividend of ten per cent upon their claims was awarded and paid. A further opportu-

nity was given certificate holders to prove their claims anew in open court and a number of such claimants there appeared, proved their claims and were awarded and paid the dividend of ten per cent. The holders of 2,886 certificates of membership have thus proved their claims anew and been paid the second dividend. It is distinctly agreed upon in the case stated that a large number of the actual original holders of certificates of membership, who had duly appeared and proved their claims at the first audit failed to appear at the second audit, thus: "1,940 of the original 4,808 certificate holders (a list of whose names and the amounts paid by each were set forth in the receiver's report) failed to appear at the second audit and prove their claims anew and receive the second dividend of 10%." Eighteen of the certificate holders who had failed to appear before the auditor subsequently appeared and proved their claims in open court and were awarded and paid a dividend, thus reducing the number of holders of certificates of membership who failed to formally present their claims, at the second audit, to 1,922, all of whom had duly appeared and proved their claims at the first audit. "The said 1,922 certificate holders whose names are set forth on the records of the court have been unknown for the space of seven years, and the amount of the fund, if any, payable to them is sought to be recovered by the Commonwealth of Pennsylvania by the said deputy escheator." The fund in court is sufficient to pay to the certificate holders who did not appear at the second audit a dividend of ten per cent, thus placing them upon the same footing with the other holders of certificates. The appellant does not contend that the escheator is not entitled to take the money in case the certificate holders who did not appear at the second audit would have been entitled to take it if they had so appeared. His contention is that the certificate holders who have not appeared and reproved their claims at the second audit would not be entitled to this fund, under the facts agreed upon in the case stated.

The appellant relies to sustain his contention upon two orders, or supposed orders, made by the court in dealing with the estate of this insolvent corporation. The first is the concluding sentence in the opinion of Judge ARNOLD, quoted in the case stated: "Then we will refer the matter to an auditor to take proof of the claims against the order and dividends will be awarded only to those who present and prove their claims." This cannot in strictness be said to be an order of the court, it can only be construed as an expression of an opinion as to the course which would be advisable for the court to pursue in the future. The second order of the court upon which the appellant relies is embraced in the decree of March 1, 1907, quoted in the case stated, in these words: "And that with the exception of the persons falling within the said classes (a) (b), all parties claiming against the estate of the said Advance Beneficial Order, remaining in the hands of the receiver who shall fail to present and prove their claims in open court at the time fixed by this order, shall be forever barred from participation in the distribution of the said fund." The classes thus excepted were, (a) certificate holders who had proved their claims anew at the second audit and (b) certificate holders who had presented their certificates or other proofs to the receiver, subsequently to June 7, 1901. The time fixed, at which certificate holders were to present their claims in open court, was April 22, 1907. On April 22, 1907, eighteen certificate holders made proof of their claims in open court and the court awarded to them the second dividend of ten per cent, which was paid.

The court having jurisdiction to distribute the fund in question had never made a decree awarding the fund to the appellant, nor had it made any decree which was final prior to that from which the appellant appeals. That part of the decree of March 1, 1907, which required persons claiming against the estate of the order to present their claims on April 22, 1907, was not a final decree; it vested title to the fund in no person. The fund remained ab-

solutely subject to the control and disposition of the court. The order requiring persons to appear at a certain time in the future or be barred was interlocutory only, made for the purpose of enabling the court to arrive at a stage in the proceedings when it could make a final decree. It was such an order as the court was perfectly free to disregard, before a final decree was reached, in case the interests of justice so required. Had any of the certificate holders who failed to appear at the second audit appeared and presented proper proofs after the expiration of the time allowed by that order of court, but before a final decree had been reached, it would have been the duty of the court to receive and consider those proofs. The facts agreed upon disclose that the fund was retained by the court awaiting the production of evidence as to who were the parties legally entitled to receive it.

The creditors all having been paid, the fund was the property of the certificate holders. The agreement in the case stated upon the fact that the 1,922 persons, who had received the first dividend but had not received the second, were original holders of certificates, established the right, at least as against this appellant and those whom he represents, of those 1,922 persons to receive the dividend in question. We are not called upon in this case to determine any question between the commonwealth and the 1,922 persons who were entitled to the dividend. The admission of the appellant, in the case stated, that the 1,922 persons, in question, were certificate holders, determined that this appellant had no right to that fund, and he has no standing to complain of the action of the court below.

The decree of the court below is affirmed and the appeal dismissed at the cost of the appellant.