### BILYEU v. LESTER et al.

(Circuit Court of Appeals, Third Circuit. May 22, 1922. Rehearing Denied July 25, 1922.)

No. 2814.

1. Bankruptcy ⬦345—Living members of bankrupt benefit association held not entitled to share in funds as against death claims.

On the bankruptcy of a beneut association, which collected assessments solely for the payment of benefits to the beneficiaries of deceased members, the living members *held* to have no claim to any of its funds as against the claims of such beneficiaries, who occupy the position of creditors.

2. Bankruptcy ⬦345—Members of benefit association held not entitled to recover assessments paid, as against creaitors.

Members of a benefit association, who, after application for a receiver for the association, continued to pay their assessments, *held* not entitled, as against creditors, to recover such payments after the association had been adjudged bankrupt.

Petition to Revise and Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

In the matter of the Order of Sparta, bankrupt; William F. Lester, trustee. William H. Bilyeu appeals from and petitions to revise an order applying fund to payment of death claims. Affirmed.

See, also, 238 Fed. 437; 155 C. C. A. 75, 242 Fed. 235.

Charles Hunsicker and William S. Wallace, both of Philadelphia, Pa., for appellant.

Francis Chapman and Horace M. Rumsey, both of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. [1] This case concerns the funds in the hands of the receivers in bankruptcy of the Order of Sparta. That order was an unincorporated beneficial association, common in Pennsylvania, and by reference to Taylor v. Order of Sparta, 254 Pa. 556, 99 Atl. 157, its status in that state will appear. It will also be seen, from the decisions noted in the margin,[1] that the underlying purpose of such associations is the payment of benefits at death. The members receive no benefits during life, but on the death of a member his beneficiary becomes a creditor, and the trust imposed on the assets of the association is for the benefit of such creditors. The decisions

[1] Hamil v. Royal Arcanum, 152 Pa. 537, 25 Atl. 645; Solis v. Blank, 199 Pa. 600, 49 Atl. 302; Advance Estate, 48 Pa. Super. Ct. 197; Fletcher v. Gawanese Tribe No. 281, 9 Pa. Super. Ct. 393; Liederkranz v. Turn Verein. 163 Pa. 265, 29 Atl. 918, 43 Am. St. Rep. 798; Frowert v. Blank, 205 Pa. 299, 54 Atl. 1000.

show that the application of the assets in case of insolvency is: (1) To expenses of judicial administration; (2) to general creditors; (3) to members of the association in proportion to their contributions. Applying these principles to the fund for distribution in this bankruptcy proceeding, we note that it came into the hands of the receivers from the treasury of the order and without earmark, and that it arose from the payment of assessments by certificate holders, the only source of revenue of the order.

This fund, being in the hands of the treasurer, would, prior to bankruptcy of the association, have been an asset which an unpaid creditor could have levied upon, and by the Bankruptcy Law the Trustee "shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon." Having administered the fund, and applied it, by the proceeding here complained of, to the payment in part of the death claims of creditors, it would seem the court below committed no error, unless the appellees, who are living beneficiaries of the association, can show some claim to it higher than that of their deceased associates. At this point we note they have no claim to the fund by virtue of their contract of membership. That contract provides for payment by them to the order of assessments made during their lives, and for no payment by the order to them during life, but only on death. Such being the contract, the case of Burdon v. Mass. Safety Fund Ass'n, 147 Mass. 366, 17 N. E. 878, 1 L. R. A. 146, has no application to the present case, for the facts, as stated by that court, were that—

"By the terms of the contract, the safety fund is not in any event directly liable for losses by death. It is rather a fund for the benefit of living certificate holders than security for the payment of money to the representatives of deceased holders. The certificate is explicit upon this point."

Seeing, then, the exceptants have, as to this fund, raised by assessments, no claim by virtue of their contract, and that it was theretofore impressed with the trust in favor of creditors, we next inquire whether the exceptants have any claim to it by virtue of any action taken or agreement or division made by the order. In that regard, two questions arise: One, whether such division was actually made, a question of fact; the other, whether such division could legally be made, a question of law.

Touching the first question: We note certain resolutions were passed by the order in 1880, by which, in substance, it was provided there should be established what was known as the permanent fund, the purpose of which was to rebate, as able, monthly assessments of those who had been members for 25 years. This fund was made up by taking a certain proportion from the regular assessments as they were paid in. By proper proceedings taken January 20, 1915, the permanent fund was abolished as of March 15, 1915, at which time, or shortly thereafter, it consisted of cash, $5,192.27; real estate, $1,900; mortgages, $7,669.12. It was also provided that the fund should be converted into cash, and whenever the accumulation of money was sufficient to pay a monthly assessment for all members of the permanent fund it should be deposited in the beneficiary fund, and such members

of the permanent fund should be exempt from paying such month's assessment.

It is contended that no such situation arose, of sufficient accumulation of cash to pay a month's assessment, and further that no such application was made. But, assuming the accumulation had occurred, the money would not have been paid to the certificate holders, but would have been transferred to the beneficiary fund, where it would still have remained the property of the order, and in its hands, and impressed with the earlier trust to pay creditors; and, such being the situation when bankruptcy occurred, that latter fact makes it all the more imperative to apply the money to pay creditors, instead of paying it, as appellants contend, to living certificate holders, for, however generous and kindly may have been the purpose of the order to relieve these long-time members of the order from the payment of a monthly assessment, it is clear that such a plan must be subordinated to the higher and juster duty of paying its creditors. We are therefore of opinion that the court below committed no error in refusing to divert the proceeds of this permanent fund from creditors and award it to certificate holders.

[2] It further appears that 65 certificate holders, in order to maintain their standing as members, paid to the order between March 31, 1915, the date proceedings were begun in the state court for receiver, and November 23, 1916, when the order went into bankruptcy, the sum of $510.28. For this they claim priority and repayment. We are unable to see on what legal or statutory basis such priority can be awarded. It is true the holders of these certificates were, when the state court held the order was insolvent and appointed a receiver, in a trying dilemma. They chose to pay their assessments to retain their membership, but the order received such payments in order to help continue its operations. Unfortunately, its purpose failed; but such failure gave the order no right to take money from its treasury and return it to the disappointed certificate holder at the expense of its creditors. The situation was not unlike that of stockholders in a bank threatened with failure, who deposited additional money to sustain its credit, but whose purpose failed to save the bank.

Finding no error in the distribution made by the court, its action in confirming the report of the master is affirmed.